We will hear our argument next in case number 242322, Pictometry International against Roofr. Thank you. Good morning, your honors, and may it please the court. I'll start with claim construction. The board's construction of claims 1 and 11 was plainly wrong. Those claims require providing a second computer input, quote, responsive to receiving the designation of a building roof structure location, end quote. That language clearly requires a cause and effect relationship. It means that the second input needs to be provided after and as a result of the designation of the location. Do I understand, the principal prior art is called Abiancar? Abiancar is my understanding. Do I remember right that the board said two things about this issue and Abiancar? One is we think it teaches the requirement even on your view about before and after, and the other was we don't actually think the after is required. Let's, it said both things. That is correct, your honor, yes. And on the claim construction piece of it, doesn't, is it the set of figures for ABC? Yes. Is it clear that the patent as a whole, put aside the language for a second, contemplates that the user acceptance button can be on the screen from the very first? Yes, I agree with that. What do you do with that piece of the spec? Because putting the button on the screen is different from providing the associated input. And one reason we know this is that in figure 4A, before any location has even been entered, the confirmed selection button is on the screen. Plainly, it cannot be selected at that point because there's no location to select. And so our point is even though in figures 4A through 4D, the confirmed selection button appears from the beginning of the process, it's not actually selectable until you get to figure 4C when the user has moved the marker onto the final location, 106B. And the patent actually says this at appendix 48, column 10, lines 25 through 28. The patent says that when said marker has been moved to final location, 106B, the user may activate a selection confirmation such as confirmed selection button 104 or otherwise. And so we read figure 4, those four screenshots, to be completely consistent with our interpretation of the second user input needing to be provided after and as a result of the user's designation. And the lines that you read, this is that column 10, line 25 to 27, is that what you read? 28? Yes. And the language... That's talking about the user may activate a confirmation rather than the, I don't know, the serving company or something, whatever it is, supplying the tool. I agree it's not explicit on that point. I do think it supports our interpretation. But is there something in here that, I guess I'm imagining a kind of form, which with a bunch of spaces and the software requires you to fill line A before you can do anything with line B. Is that what you think this is? That is what we think the claim clearly requires. Even setting aside what you think about figures 4A through 4D, we think the claim clearly requires that. The analogy we made in our brief is to an email. When you open an email, you can't click the send button until you actually enter a recipient's email address. And so the input corresponding to the send button, even though it appears on the screen from the very beginning, it's not actually provided until the recipient email address is entered. And even if you think the specification is ambiguous on this point, I think that the claim is so clear in its use of the phrase responsive to, that the specification can't be reasonably understood to suggest an interpretation like the one the board adopted, where the second user input can be provided even before the location is designated. It's true, and I think you acknowledge this in speaking to Judge Taranto, that the board's final written decision also looked at it even accepting the proposed temporal requirement, or at least that's how it was described in the final written decision. So what is wrong with what the board did even accepting that proposed requirement? So there are three things wrong with that. The first thing that's wrong with it is that Ruffer did not make that argument below. Ruffer did not argue for an obvious modification of Ob-Yonker. Ruffer argued that Ob-Yonker's marker locking feature expressly satisfies the requirements of the claimed second computer input. The second problem, even setting aside the forfeiture, is that this, because we have a reference that Ruffer now on appeal, and you can see this at page 29 of the red brief, Ruffer on appeal concedes does not disclose a second input that is provided in response to a location designation. We have a situation where there is a missing element. The prior art does not disclose this claimed second computer input that's provided responsive to the designation. And the board's short analysis here at appendix 11 attempts to fill in that gap seemingly by reference to logic or maybe common sense, and I would submit that that attempt exactly parallels the flawed attempts to fill in missing limitations with common sense that this court rejected in cases like Arendi and DSS and Roe v. And the Roe v. case in particular is directly on all fours with this one. In Roe v., the claim required displaying an indication based on determining that a TV program was available to the user, and then the reference disclosed displaying the indication before that determination was made, and this court reversed the board's obviousness determination based on that undisputed fact. The same undisputed fact is present here. The third problem with this, again, very short analysis on appendix 11 is that this theory pretty transparently uses the claimed invention as a roadmap to get to obviousness. The rationales that Ruffer offers to structure the system this way in order to try to support this analysis that the board engaged in at appendix 11, you can find these on page 31 of the red brief, things like improving accuracy, improving user convenience. Those are the very rationales that the patent itself provides for the inventive method. The claimed series of steps, it may look logical or obvious once they've been laid out by the inventors, but Ruffer's not allowed to use that which the invention taught against his teacher or to rely on its own subjective beliefs about what's obvious, as this court said in N. Ray Lee. So you made, I think as I heard you make a kind of procedural point about the, even on your, the page 11 piece of the board's decision, this is even accepting the the, this, whatever this is, must be after that, that Abhiyankar teaches that, and I think you said that argument wasn't made by the other side. In your blue, where in your blue brief do you make the point that there's, that the board has a problem because the other side didn't make the argument to the board? We did not attack this in our blue brief based on the fact that. So I'm going to, I'm going to just put, put that aside. Okay. So, so you have other arguments that somehow the, basically at that point that's on a substantial evidence ground. I would agree that it is on substantial evidence, but so were Arendi and DSS and Roe v. and so forth. I think the problem here is that, and I want to be very clear about this, Ruffer has conceded on appeal that Abhiyankar does not expressly teach this element under the claim construction that we are advocating. So if your honors agree with the claim construction, then we undisputedly have a missing element from the prior art. So we've got to have something to fill that in, and I would submit that what the board provided here at Appendix 11 is simply not enough. It is a citation to a couple of paragraphs of Ruffer's expert declaration in which he was addressing motivation to combine, not any motivation to combine Abhiyankar with Pershing or Kennedy, not any kind of motivation to modify Abhiyankar to make a second computer input. Tell me why the following is too simple The problem is that the claim requires specifically that the input be provided after the location is selected. That's the functionality that's missing. Right, but I thought that the page 11 analysis says Abhiyankar says I find in Abhiyankar the supply of an activated button, to use a slightly different language, and it says, well, we think it would be perfectly obvious for the activation of that button, not the user filling it in, just making itself receptive to the filling in, either of the two times, before or after. So why is that, I don't know, a bridge too far for the board to cross? So I think it's a bridge too far for a couple of reasons. First, again, the board is trying to fill in a missing limitation with just a couple of sentences of analysis that don't cite to anything in the references themselves. Some things really are simple. Correct, but that leads into the second point that I wanted to make, which is that there is no shortcut to the obviousness analysis that's permitted when the invention is simple. You don't get out of the requirement of finding all the elements in the prior art, finding a motivation to combine, finding a reasonable expectation of success. In fact, it's quite the opposite. This court has been clear that it's precisely in cases where the invention in hindsight seems very simple that you need to be rigorous about the way that you apply the obviousness analysis, because it's in those cases where the temptation to judge by hindsight is at its worst. In just the handful of seconds I have remaining before I run into my rebuttal time, I also want to say a word about the functional requirement of the claims, which is claims 111 and 17, which requires that the user be able to signal acceptance of a building roof structure location. The board found that Obianker's marker locking feature discloses this requirement too, but the board's reasoning on that front boils down to one sentence that is undisputedly factually incorrect. The board said that locking a marker means that the user will not change the roofer concedes this is wrong at pages 1 and 24 to 25 of the red brief. In Obianker, after marker locking, the owner of the marker can still relocate it. So this marker locking feature in Obianker, it's about permissioning. It's about ensuring that the person who locks the marker is the only one who can move it in the future. That's not the same thing as the claimed requirement of signaling acceptance of the building roof structure location. I'll preserve the remainder of my time for rebuttal. Thank you. May it please the court, good morning again, your honors. Let me start with the obviousness argument and then I'll address the claim construction argument. The petition explicitly stated, and this is appendix at 106, quote, a posita would have been motivated by the teachings of Obianker to allow users of Pershing 789's roofing system the option to specifically designate the geographic position of a roof to be analyzed using a marker and to include a subsequent user confirmation option to ensure the correct roof is being analyzed. That's also at appendix 781 to 782, that's the expert declaration providing similar opinions. And that's followed by several paragraphs from our expert providing a motivation to combine Pershing 789 and Obianker in this fashion. That was appendix 782 to 784. Now the board was able to adopt this reasoning and this obviousness analysis in a couple of sentences because it was never disputed. So we expressly raised the obviousness combination and nowhere in the briefing below, not in the Patent Owner response, not in the SIR reply, nowhere did they argue that it would not be obvious to combine the references the way that we proposed. Nowhere did they dispute motivation to combine. The only argument below was whether Obianker itself, by itself, disclosed having the lock pushpin button or the user acceptance input be responsive to the designation of the location information. So I think by virtue of the fact that that was not addressed at all, the board was able to rely on the unopposed and unchallenged obviousness combination and concluding that even under Patent Owner's interpretation of the claims now, the claims would still be rendered obvious by Pershing 789 and Obianker. There's also a secondary comment. Do you agree with the statement made by opposing counsel that the board is in part relying on common sense to reach the conclusion? That's a good question, Your Honor. I don't think so. I think the common sense and logic question are not relating to the obviousness theory. I think they're relating to the theory under Rufer's interpretation of the claims. And I think taking a step back on the claim construction issue will help explain why that is. I'm sorry. I thought that you began your argument by saying there's the obviousness point, there's the claim construction point. I took the obviousness half to be on the assumption that their claim construction is right about the before or after. That's right, Your Honor. I think when the board and its decision referred to the Obianker's button being responsive to the selection being a matter of logic, I didn't understand them to be referring to the obviousness theory. I understood that to be their analysis under Rufer's interpretation of the claim. I think the analysis on obviousness, I understood to be Rufer presented an obviousness theory where you combine Pershing 789 and Obianker and provide the button subsequent to the user designation. That is, there is a several paragraphs of motivation to combine the references providing after that. None of that was challenged or rebutted, and so that is a sufficient reason to find that the claims are rendered obvious. Now, the board then went back and applied its construction, which it kind of adopted Rufer's interpretation, and I believe that's where it was referring to the matter of logic. Let me try to break this down because I think a little bit of context will help. I think both sides agree that responsive to imposes some kind of causal requirement. Something causes something else. I think that is consistent with the position the board took. The issue is that the argument that was raised by pictometry below, there wasn't an express claim construction argument that was raised in the briefing. The way the issue came up was pictometry argued that because Obianker's lock pushpin button is shown on the user interface without an indication of when it is presented on the user interface, that can't be responsive to. At least the way that we understood the argument below, and the way I believe the board understood the argument below, was a question of when is the button itself actually displayed or presented on the user interface? And I think when the board said that there is not a temporal requirement, that's what they're referring to. Now, I think we now have two ways that pictometry is articulated that a user input can be provided responsive to. There's the display of the button, and now we have the argument that is, well, when is the button activatable? I'm not sure whether that argument was raised below, but regardless, those are the two alternatives they provided now. We think there's a third alternative, which is when is the functionality of the button providing what is required in the claims? Because you can have a button on the screen, but you can't select it yet. You can have a button on the screen, and you can select it, but you can also have a button in the user interface that, depending on other selections that the user makes, or other, I guess, other variables in the system, does different things at different points in time. And so responsive to our view is, can also be a functional relationship of what the button is doing. And I think we can see in the claim language that the button potentially, the user input, it's not just a question of providing a user input responsive to a designation. So the full limitation is— Just to be clear, when you talk about providing a user input, you're not talking about the user inputting. That's correct. It is some kind of element— System is providing an opportunity for the user to give a signal. That's correct, Your Honor. So it's not a question about what the user is doing. It's about what the system is doing. Now, the claim, the actual limitation at issue here, which is in Claims 11 and 17, is responsive to receiving the designation of the building roof structure location, providing a second computer input capable of signaling user acceptance of the building roof structure location within the first image. So it's not just about having a button or having a user input that is displayed or available to be activated. It's also having that user input element do a specific thing, right? It has to be capable of signaling user acceptance of the building roof structure location. And this is important because we actually have two locations in the claim, right? At the beginning of the claim, the system receives a first location data. Then the user— This is Joint Appendix 50, Column 14, just looking at Claim 1. First, the system receives first location data. Then there is a first computer input that allows the user to signal a designation of a building roof structure location, wherein the building roof structure location is different than the first location data. I'm kind of skipping a few words, but the important point here is that this building roof structure location is different from the first location data. After the user has been responsive to receiving the designation of the building roof structure location, then you provide a second computer input capable of signaling user acceptance of the building roof structure location. Now, if we have— We used the example of Figure 4 from the patent. If you have— The user says, show me 123 Main Street, and a picture comes up, and it's not— And it covers the whole block. And then the user says, okay, that's the building that's 123, and says that in some way. That's specifying the building that's different from the location. And now something is supposed to happen. And I would add even something more. If you look at Figure 4B, which is on Appendix 27, in Figure 4B, after the user enters the address in the first instance, there's already going to be a marker place. That's marker 106A in Figure 4B. Now, this is not a marker that the user has selected yet, because the patent tells us that doesn't happen until Figure 4C. But there's first location information. And nothing in the specification suggests or indicates that the user cannot, at this point in time in Figure 4B, press the confirm selection button. But if the user presses the confirm selection button in Figure 4B, it is not signaling user acceptance of the building roof structure designated by the user, because the user hasn't made a designation. It's confirming selection of the first location data, which the claim tells us is different from the building roof structure location. So the significance of this is the same button serves two different functions, potentially at different points in time. In Figure 4B, I press the confirm selection, and it is signaling acceptance of the first location information, which the computer provided. In Figure 4C, if I press the same button, it confirms user acceptance of the user designated building roof structure. And so that is a third way in which the user input can be responsive to the selection. It's not just necessarily when do you see the button on the screen, or when does the system let you click on the button, but when does the button actually perform the function that the claim requires. What is your best support that Avianca disclose the claimed requirements, even with the temporal limitation as we've been discussing? So I don't think, we don't take the position that with the temporal requirement on the display. So let me put it differently. I think if you look at it from a functional perspective, then our position is that Avianca does disclose the functional difference. Because Avianca, you put in the address, you get wherever the marker is currently located. If you press the lock push pin button then, and I think this is where the board's matter of logic analysis comes into play. If before you move the marker in Avianca, you press the lock push pin button, then that can't be responsive to a user designation because no user designation has been made yet. Which means the only time that the function of the button is to signal user acceptance of a designation of a building, or a designation of a location, is after the user's actually made a designation. So it's the same idea here, the function of the button changes. If the user hasn't made any kind of designation, it's accepting the kind of the default computer selected location of the position. And if the user has, now it's confirming the user's selection or the user's designation. And so the function is responsive to the user designation. Now, under Pictometry's view, which I understand only includes the display of the button and the activability, or the ability to activate the button, then we agree. That's not expressly in but we think from a functional perspective, Avianca expressly discloses under the functional understanding of what responsive to can include. And that's at least how we interpret the board's analysis, especially when it says that it's a matter of logic, that you cannot have a button that is responsive to a designation until the designation has been made. Now, I do just want to briefly address the, and I guess one other thing I just want to say on that point also, just in terms of the length of the board's decision, this entire argument on responsive to was three pages of Pat Milner's response. So I think- You're not going to make an argument that being brief somehow is insufficient for an explanation. No, no, no. I'm just saying I don't think that the length of the board's explanation is necessarily a determination of whether it addressed all the issues. Right. Yeah. So I understood my friend on the other side to be saying that because the board's decision is essentially a couple of pages, they couldn't have gotten enough rationale. But they're also responding to an argument that in the first instance was only three pages. I think the depth of the analysis was commensurate with the depth of the argument on the issues below. Both of them could be long enough to reach the ground. Exactly, exactly. We're not saying that there was, that no argument was made by pictometry. We're just saying it was a brief argument. And likewise, we think the board addressed the argument. Didn't need a lot of pages to do that. The only other thing that I want to briefly address is on the findings on user acceptance, which is the only argument that also affects independent claim 17. Again, the argument that was raised by pictometry below is that Avianca's lock pushpin button or its marker selection is not used to control relocation, but is instead used to claim a wiki profile. And the board's analysis was responsive to that. They said it's not just used to claim a wiki profile. It is used to, quote, control the future relocation of the marker in the mapping environment or to lock pushpins for movement in the map. And that's Appendix 9. The board is referring to and citing to Avianca there. So at that point in time when the user presses the lock pushpin button, that is acceptance because the user at that point does not intend to change the location, which is the result of Avianca's locking feature. Now, there's nothing in the claims or in the specification of the 800 patent that says, well, once you make this exception, at no point in time in the future can you ever change your mind and decide I want to move the marker again or to move the designation again. In fact, in Figure 4D, there's a checkbox for the user to reconfirm their selection, which at least implies that you have the option of changing your mind and saying, you know, the selection that I made when I pressed the confirm selection button in 4C, I didn't actually mean that. Let me relocate the button again. But I think at the end of the day, it doesn't matter because, remember, this is an obviousness combination. The point that Avianca discloses is that there is a input that allows you to confirm selection of the location. You can rely on that regardless of what else it teaches. Thank you, Your Honors. Thank you. Thank you, Your Honors. I'll make three brief points in rebuttal. First, the timing of the second computer input in this claim is important. This is not just a matter of, oh, you could provide it before or provide it after. Who cares? If you don't provide it until the user has actually moved the marker to precisely specify the roof, you ensure that the user is not blindly accepting whatever location the algorithm provides. That's important because it's really critical in this context that the location the user selects be right, because that selection is what is used to correlate between the user-facing database that the user uses to designate the location and then the more detailed database that's actually used to generate the roof report. Second, my friend suggested that in the Figure 4 workflow in the specification that the confirm selection button is selectable in Figure 4b. That's not supported by anything in the patent. The patent does not suggest that it's selectable in Figure 4b, and the claim itself is very clear that the input is not provided until you get to Figure 4c. He suggested that we might not have raised this distinction between displaying on the screen versus actually providing the corresponding input below. You can find that at Appendix 470 in our Patent Owner's Server Reply. Third, my friend defended the length of the board's analysis on two grounds that I heard. The first is that they purportedly made this obviousness argument below that it would have been obvious to modify Objunker's marker locking feature to provide it after the drag and drop, and that we never responded to that argument. That is not correct. They did not make that argument below, and if you want to see this illustrated very well, take a look at their petitioner reply at Appendix 444 to 53. They argued exclusively that the claims do not impose a causal requirement. They did not argue that assuming the claims do impose a causal requirement, oh, well, Objunker in combination with Pershing or Kennedy nonetheless renders it obvious. Second, he suggested that the board's cursory treatment of this issue was justified because we only spent three pages on it in our Patent Owner Response. We focused on Objunker's additional verifications in our Patent Owner Response because that's what they focused on in the petition. Once they pivoted to the marker locking feature in reply, we spent six pages of our Patent Owner Sir Reply on it. If the court has any questions, I'm pleased to answer them. Otherwise, thank you. Thank you. Thanks to all counsel. The case is submitted.